UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| *In re* INVESTIGATIVE SUBPOENA DIRECTED TO BANK OF AMERICA, N.A., <br><br>*Issued by*: <br><br>COMMODITY FUTURES TRADING COMMISSION, <br>Three Lafayette Centre <br>1155 21st Street, N.W. <br>Washington, D.C. 20581, <br><br>            *Applicant*. | **FILED UNDER SEAL** <br><br>Miscellaneous No. |

**SEALED MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF APPLICATION FOR *EX PARTE* ORDER TO DELAY NOTICE OF INVESTIGATIVE SUBPOENA PURSUANT 12 U.S.C. § 3409**

The Commodity Futures Trading Commission ("the Commission"), by and through the undersigned counsel, respectfully submits under seal this Memorandum of Points and Authorities in support of its contemporaneously-filed Application for an *Ex Parte* Order to Delay Notice of Investigative Subpoena pursuant to Section 1109 of the Right to Financial Privacy Act of 1978 ("RFPA"), 12 U.S.C. § 3409 ("Application"). The Application seeks an *ex parte* order delaying for ninety (90) days service of the notice required under 12 U.S.C. § 3405 of an investigative subpoena ("Subpoena") for records pertaining to personal bank accounts that Dean Dellas ("Dellas") holds at Bank of America, N.A. ("Bank of America"). The Subpoena that the Commission intends to issue is attached hereto as Exhibit A. The Application further requests that the Court order that Bank of America and its officers, employees, and agents, are prohibited from disclosing that the Commission requested or received these records.

As set forth below, the Commission is investigating whether Dellas engaged in fraud in connection with his activities managing investment accounts and trading futures for at least two individuals in violation of the Commodity Exchange Act, 7 U.S.C. §§ 1-27f (the "Act"), and the Commission Regulations ("Regulations") promulgated thereunder, 17 C.F.R. pts. 1-190. In connection with its investigation, the Commission plans to subpoena records associated with Dellas's personal bank accounts from Bank of America to trace the source and flow of victim funds and to determine their present location. Absent the issuance of the *ex parte* order requested here, the Commission is required by the RFPA to give notice to Dellas regarding the issuance of the Subpoena and to wait 14 days to give him an opportunity to object. Such notice and the subsequent delay would seriously jeopardize the Commission's investigation and may result in the destruction of, or tampering with, records relevant to the Commission's investigation. Accordingly, an *ex parte* order delaying notice of the Subpoena is warranted pursuant to 12 U.S.C. § 3409.

## BACKGROUND

The Commission is presently investigating Dellas for potential violations of the Act and Regulations in connection with Dellas's activities trading futures on behalf of his customers. The Commission's investigation has thus far revealed that Dellas and his company, DSD Capital Management LLC, ("DSD Capital")[1] may have abused their positions of trust and defrauded customers by, among other things, misappropriating customer monies from the accounts that they were entrusted to manage.

From at least 2021 through 2023, Dellas and DSD Capital actively managed the personal investment and retirement accounts for several members of a family located in central New

---

[1] DSD Capital is a New York-based limited liability company for which Dellas is sole managing member.

5

York. According to these individuals, Dellas agreed to manage essentially all of their personal savings and retirement funds in exchange for advisory fees that were wholly, or at least principally, based on the degree of profits that Dellas and DSD Capital generated in their accounts.[2] Despite these representations and assurances, it appears that Dellas instead charged these customers fees that well exceeded the agreements with his customers and that he otherwise managed their accounts in a fashion calculated to enrich himself at their expense.

For example, according to Customer A, a retiree in her 90's, Dellas and DSD Capital began managing her accounts in the Spring of 2022. Dellas was aware that the funds in these accounts represented essentially all of her life's savings and that Customer A's principle goal in the arrangement with Dellas was the preservation of her capital. Nevertheless, Dellas appears to have engaged in a high-risk, speculative trading strategy that he failed to fully disclose to Customer A. This included trading oil, equity index, and digital currency futures. Unfortunately, Dellas's trading strategies were ultimately unsuccessful, resulting in substantial losses in Customer A's accounts. While Customer A started with approximately $1.9 million when she first authorized Dellas to manage her accounts, over the course of nine months of Dellas trading on her behalf—from April 2022 to December 2022—her accounts lost more than $360,000.

Because the fee arrangement between Customer A and Dellas was wholly or principally based on the profits that Dellas could generate in her accounts and because Dellas only generated losses during this time frame, the advisory fees to which Dellas could claim legitimate entitlement for this period are minimal. Yet, Dellas used his authority over Customer A's

---

[2] This took the form of customers agreeing to pay Dellas and DSD Capital a particular percentage of the profits that he and his company generated.

accounts to charge substantial advisory fees, all without fully disclosing the nature and extent of these purported fees. For example, Dellas charged Customer A unspecified fees, which ranged from $30,000 to $50,000 per month. In total, over the nine months that Dellas managed Customer A's accounts in 2022, Dellas paid himself more than $276,000 for unspecified services.

In early 2023, Customer A moved her accounts to another brokerage firm, where Dellas's fraudulent, account-depleting activity apparently continued. This time, Dellas did not inform the brokerage firm that he was acting as Customer A's advisor or disclose that he was charging Customer A for his services. Instead, he falsely indicated that he was acting merely as a "friend" and expressly represented that he was not being "compensated for providing investment advice, placing trades, or otherwise managing [Customer A's] account." Yet, Dellas was managing the accounts and placing trades and he was doing so pursuant to the understanding he had previously reached with Customer A. Like the year before, Dellas generally lost money trading in Customer A's accounts. Nevertheless, he continued to deplete Customer A's accounts—this time by initiating periodic wire transfers for large sums of money from those accounts to accounts that Dellas controlled. In several cases, these individual transfers were for amounts upwards of $30,000 and, overall in 2023, Dellas appears to have transferred more than $130,000 from Customer A's accounts to accounts that he owns or controls.

In short, it appears that Dellas may have engaged in a fraudulent scheme in which he used his authority over Customer A's accounts to enrich himself at Customer A's expense. It appears that, in less than two years, Dellas caused more than $400,000 to be transferred from Customer A's accounts to accounts that he owned or controlled through various "fees" and wire transfers. According to Customer A, Dellas did not fully disclose the nature or extent of these

7

fees or transfers, and there appears to be little or no justification that would support Dellas's actions in excessively depleting her accounts.

Based on the foregoing, the Commission is continuing to investigate whether and the extent to which Dellas and DSD Capital engaged in fraud in violation of the Act and Regulations. Documents produced to the Commission reflect funds, which appear to be associated with the unauthorized fees and transfers described above, flowing from Customer A's accounts to DSD Capital bank accounts and then to Dellas's personal bank accounts at Bank of America. Accordingly, the Commission intends to serve an investigative subpoena on Bank of America for Dellas's personal bank records. The Commission intends to review these records to trace the flow of customer funds, confirm and establish the scope of any misappropriation, and potentially identify other bad actors, victims, and recipients of victim funds. The RFPA generally requires the Commission to provide notice to the holders of accounts from which personal information is sought. Because this matter has many of the hallmarks of a fraudulent scheme, an order delaying disclosure of the investigatory Subpoena is necessary to enable the investigation to remain covert, and allow the Commission to complete its investigation.

## STANDARD

Under the RFPA, the Commission generally may not have access to, or obtain copies of, information contained in the financial records of any customer from a financial institution unless the customer has authorized such disclosure or "such financial records are disclosed in response to an administrative subpoena or summons which meets the requirements of section 3405 [of the RFPA]." 12 U.S.C. § 3402(2). Section 3405 of the RFPA generally requires, among other things, that, if the Commission issues an investigative subpoena to a financial institution for a customer's personal financial records, it notify that customer of the subpoena and wait at least

fourteen days before obtaining any records in order to afford the customer an opportunity to quash the subpoena.  *See* 12 U.S.C. §§ 3405 and 3410(a).

This statutory notice period, however, may be delayed.  Pursuant to 12 U.S.C. § 3409(a), a court may issue an *ex parte* order delaying the customer notice, upon an application for delay of such notice made with reasonable specificity and a finding that:

> (1)   the investigation being conducted is within the lawful jurisdiction of the Government authority seeking the financial records;
>
> (2)   there is reason to believe that the records sought are relevant to a legitimate law enforcement inquiry; and
>
> (3)   there is reason to believe that such notice will result in . . . destruction of or tampering with evidence; . . . or . . . otherwise seriously jeopardizing an investigation . . .

The Commission respectfully submits that each of these factors here and requests that this Court enter the requested Order.

## ARGUMENT

**THE COURT SHOULD ISSUE AN *EX PARTE* ORDER DELAYING CUSTOMER NOTICE.**

As demonstrated below, the Court should issue an *ex parte* order delaying the customer notice required by 12 U.S.C. § 3405 because (1) the Commission has jurisdiction to conduct this investigation, (2) the financial records that the Commission seeks are relevant to a legitimate law enforcement investigation, and (3) there are grounds to believe that providing notice of the subpoena would result in the destruction of or tampering with evidence or otherwise jeopardize the Commission's investigation.

### A.   The Investigation is Within the Jurisdiction of the Commission.

The Commission has broad jurisdiction to conduct investigations "to ascertain the facts regarding the operations of . . . persons subject to the provisions of [the Act]."  7 U.S.C.

9

§ 12(a)(1). The Division of Enforcement (the "Division"), on behalf of the Commission, has authority to conduct investigations "to determine whether any persons have violated, are violating, or are about to violate the provisions of [the Act], or the rules, regulations or orders adopted by the Commission pursuant to th[e] Act[.]" 17 C.F.R. § 11.2(a). In furtherance of that authority, the Division may issue subpoenas "when authorized by order of the Commission." *Id.*

The Commission, like other federal agencies, has far-reaching investigatory authority comparable to that of a grand jury, permitting it to "investigate merely on suspicion that the law is being violated, or even just because [the Commission] wants assurance that it is not." *United States v. Morton Salt Co.*, 338 U.S. 632, 642–43 (1950); *see also Resolution Trust Corp., v. Walde*, 18 F.3d 943, 947 (D.C. Cir. 1994) (following *Morton Salt*); *CFTC v. Ekasala*, 62 F. Supp. 3d 88, 93 (D.D.C. 2014) (same). The Commission's authority is especially broad in the pre-complaint stage, where the Commission "is under no obligation to propound a narrowly focused theory of a possible future case." *Ekasala*, 62 F. Supp. 3d at 93 (quoting *FTC v. Texaco*, 555 F.2d 862, 874 (D.C. Cir. 1977)).

This investigation is within the Commission's lawful jurisdiction. The Commission has broad enforcement authority to prohibit fraud in connection with futures, the precise conduct for which Dellas is being investigated. *See* 7 U.S.C. § 6b ("It shall be unlawful for any person . . . in connection with . . . any contract of sale of any commodity . . . for future delivery that is made, or to be made . . . for or on behalf of any other person. . . to cheat or defraud or attempt to cheat or defraud the other person. . . ."); 7 U.S.C. § 9 and 17 C.F.R. 180.1 (together, making it unlawful to knowingly or recklessly, use or attempt to use any manipulative, deceptive or artifice to defraud, make material misrepresentations and omissions, or engage or attempt to engage in acts or practices that operate or would operate as a fraud). Furthermore, by trading futures on

10

behalf of customers, Dellas may have acted as a Commodity Trading Adviser ("CTA") under the Act.  *See* 7 U.S.C. § 1a(12).  CTAs are subject to specific antifraud provisions in 7 U.S.C. § 6*o*, including prohibitions on "device[s], scheme[s], or artifice[s] to defraud" customers as well as "course[s] of business which operate[] as a fraud or deceit" upon customers.  Accordingly, the conduct the Commission is investigating here falls within the Commission's jurisdiction, as required by 12 U.S.C. § 3409(a)(1).

        **B.**        **The Financial Records Sought Are Relevant to a Legitimate Law Enforcement Investigation.**

As explained above, the Commission's investigation seeks to determine whether Dellas committed fraud in violation of the Act and Regulations and to determine whether and to what extent Dellas may have misappropriated customer funds.  The Division's investigation to date has revealed that Dellas caused significant sums of customer funds to be transferred to his personal bank account at Bank of America.  The financial records sought by the Subpoena may: (a) reveal whether Dellas misappropriated or otherwise mishandled customer funds; (b) identify any additional customers and the total amount of customer funds that Dellas may have misappropriated or mishandled; (c) identify any banks or other financial institutions to which customer funds were transferred; and (d) identify other individuals who may have participated in or were beneficiaries of Dellas's potentially fraudulent scheme.  Thus, there is reason to believe that Dellas's financial records are relevant to this investigation.

        **C.**        **Providing Notice to Dellas May Result in Destruction of or Tampering with, Evidence or Otherwise Seriously Jeopardize the Investigation.**

There is reason to believe that notifying Dellas of the Subpoena will result in the destruction of or tampering with evidence or "otherwise seriously jeopardiz[e]" the Commission's investigation.  *See* 12 U.S.C. § 3409(a)(3).

        **1.**        **Notice May Result in the Destruction of or Tampering with Evidence.**

11

Evidence relevant to this investigation includes not only those copies of records maintained by Bank of America, but includes other documents within Dellas's possession or control or the possession or control of others who may be acting in concert with Dellas. The Commission has not yet notified Dellas of its ongoing investigation, and notifying him of the proposed subpoena would provide Dellas the opportunity to destroy or tamper with books and records and any other documents relevant to the investigation. Further, providing Dellas with notice of the Subpoena would also afford Dellas time to transfer funds to other accounts, hide misappropriated funds, or otherwise dissipate customer funds.

### 2. Notice May Seriously Jeopardize the Investigation.

Compliance with the RFPA notification requirements, and resulting delay, would thwart the Commission's ability to conduct an effective investigation. As described above, the Commission has reason to suspect that Dellas misappropriated victim funds. The Commission needs access to Dellas's personal bank records to determine certain crucial investigatory information regarding the flow of funds to and from relevant accounts. Alerting Dellas to the Subpoena would undermine the Commission's ability to review and analyze that information undetected to determine if sufficient evidence exists that would justify the Commission pursuing further action, such as requesting that accounts be frozen to preserve any remaining funds. Notice of the Subpoena would also allow Dellas the opportunity to transfer any remaining funds to other accounts, including off-shore accounts, thus putting the funds outside the reach of the Commission.

*   *   *

**CONCLUSION**

For the reasons stated above, the Commission respectfully requests that the Court grant this application for an *ex parte* order delaying customer notice under the RFPA for a period of ninety (90) days and prohibiting Bank of America, and its officers, employees, and agents, from disclosing that the Commission requested or received records. A proposed Order is being submitted herewith.

Dated: December 22, 2023

                Respectfully submitted,

                */s/ Derek S. Hammond*
                DEREK S. HAMMOND, D.C. Bar No. 1017784
                COMMODITY FUTURES TRADING COMMISSION
                1155 21st Street, N.W.
                Washington, D.C. 20581
                Telephone: (202) 845-5020
                dhammond@cftc.gov

                *Attorney for the Commission*